UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MACK HOWELL, individually;

     Plaintiff,

                                     No.

-v-                                    Hon.

MATTHEW HAMBRIGHT,
in his individual capacity;

     Defendant.

---

## COMPLAINT AND JURY DEMAND

NOW COMES the Plaintiff, MACK HOWELL, individually, by and through his attorneys, MUELLER LAW FIRM, by WOLFGANG MUELLER and JOHN WM. MARTIN, JR., and files his Complaint against the Defendant, MATTHEW HAMBRIGHT ("HAMBRIGHT"), in his individual capacity, in this civil action, stating unto this Court as follows:

1.     This is an action for damages brought pursuant to 42 U.S.C. §§1983 and 1988, and the Fourteenth Amendment to the United States Constitution, against Defendant Hambright.

2.     Jurisdiction is founded upon 28 U.S.C. §1331 and 28 U.S.C. §1343.

3.     Forum is proper based on the situs of the incident, which occurred in the City of Eastpointe, Macomb County, Michigan, within the Eastern District of

Michigan.

4. At all pertinent times Plaintiff, Mack Howell, was a United States citizen.

5. At all pertinent times, Hambright was employed as a police officer by the Eastpointe Police Department ("EPD") and was acting under color of law.

6. Hambright, as a sworn police officer, had taken an oath, the Law Enforcement Code of Ethics, that stated in pertinent part: *"As a sworn police officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice."*

## GENERAL ALLEGATIONS

7. On April 3, 2014, at approximately 12:53 a.m., a 7-11 convenience store was robbed at 18700 Ten Mile Rd. in Eastpointe, Michigan. At the scene, the store clerk described the robber to Eastpointe police as a black male, approximately 6'0'' tall with a medium build, wearing black pants, black hoodie, and a black mask obscuring most of his face except the eyes.

8. The robber carried an empty cardboard box in his hands when he came to the counter. He claimed he had a gun but never showed it. He grabbed several bills from the cash register before running out of the store, dropping the cardboard

2

box and a $20 bill.

9.      During the police investigation, Brian Dobrzycki, a canine handler from the Roseville PD, was called.  Instead of having the canine begin its track in the store where the robber had dropped the $20 and cardboard box, the handler started the track at the front door, which had been contaminated by the presence of police, the clerk, and customers.

10.      The canine "hit" on a can of beer in a paper bag near a trash can just outside the entrance door on the north side of the building.  The beer can also contained a straw.

11.      In July 2014, the MSP sent Hambright a facsimile report indicating that DNA test results from the beer can confirmed a match to Plaintiff.  From that point forward, Hambright decided that Plaintiff was the perpetrator.  The straw also contained DNA of an unknown female.

12.      Knowing that the perpetrator spent time on the east side of the building, near the store's trash dumpster, Hambright intentionally and falsely reported that "the east side of the building is where the brown bag and beer can was found that had Howell's DNA on it."  Hambright knew that the "brown bag and beer can" had been found in front of the store (north side) by a trash receptacle next to the 7-11 entrance doors.

13.      After learning of Plaintiff's identity and physical description (5'6"

and approximately 200 lbs.), Hambright decided to review the store's video surveillance.

14.     Upon review, Hambright conducted what can only be described as an amateurish forensic experiment to try to determine the height of the perpetrator. Having conducted the experiment, Hambright deliberately and falsely claimed that the perpetrator was 5'6" tall, (ironically the same height as Plaintiff, Hambright's pre-determined perpetrator), despite knowing that the perpetrator was closer to the 6'0" description given by the store clerk.

15.     Hambright reported that he looked up Mack Howell in state databases and determined that as of July 2013, Howell was 5'5", 180 lbs.

16.     Hambright then called the store clerk and explained that there was a DNA match on the suspect, and asked if she was "sure" about the height of the perpetrator.  The clerk responded that she was not certain about the height but that the robber was taller than her own height of 5'4 1/2".  Also, for the first time, the robber's weight became 180 lbs.

17.     In the summer of 2014, there was a string of robberies of 7-11 stores in Macomb County perpetrated by a black male.  On August 20, 2014, the same 7-11 store at 18700 Ten Mile Rd. in Eastpointe was robbed. The robber was caught near the store by police who had been surveilling him for some time.

18.     The serial robber, Albert Arthur, Jr., was 5'10", 170 lbs. at the time of

his arrest.

19.     Hambright, the OIC from the subject April 3, 2014, 7-11 robbery, was also the OIC on the August 20, 2014, robbery case.

20.     On September 19, 2014, Hambright visited the store clerk at her house.  He showed the clerk a photo lineup containing Plaintiff's photograph.  The clerk selected someone else from the lineup.  Hambright asked the clerk if she was sure of the pick, at which point she covered the lower half of each suspect (the robber had been wearing a ski mask that just showed the eyes) and selected Plaintiff, based solely on the eyes.

21.     Hambright never told the clerk that another robber matching her original description had been caught.  He never mentioned that the same robber had robbed five other 7-11 stores that summer.  He never mentioned that the robber in the other robberies wore all black clothing, as had the robber in the subject robbery.  He never mentioned that Mack Howell was 53 years old.  He never mentioned that Howell was only 5'6" and 200 lbs.

22.     At the Preliminary Exam, the clerk identified Plaintiff as the perpetrator.

23.     At the Preliminary Exam, Hambright testified about the photo identification procedure.  He did not mention that Ms. Gaston had originally

selected another person (#5) from the photo array and only selected Plaintiff after Hambright asked her "are you sure?"

24.     At and before Plaintiff's August 2016 trial, Hambright never disclosed to the prosecutor that he knew of the existence of a serial 7-11 robber who was convicted of robbing several 7-11 stores in Macomb County during the spring and summer of 2014 and matched the store clerk's original description of the robber.

25.     At and before Plaintiff's August 2016 trial, Hambright never disclosed to the store clerk that he knew of the existence of a serial 7-11 robber who was convicted of robbing several 7-11 stores in Macomb County during the spring and summer of 2014 and matched the store clerk's original description of the robber.

26.     Hambright never disclosed to the prosecutor (or the store clerk) that he was the OIC of the 7-11 robbery at the same Eastpointe location where the alternate suspect, Albert Arthur Jr., was arrested.  Hambright never disclosed to the prosecutor or clerk that Arthur pleaded *nolo contendre* to five such robberies in May 2015, before Plaintiff was arrested, and was in prison at the time of Plaintiff's trial.

27.     At and before trial, Hambright never disclosed to the prosecutor that he knew that Plaintiff was not the person identified in the surveillance video and that his "experiment" was inaccurate when he suggested the perpetrator was 5'6".

6

28.     On August 29, 2016, based only upon the clerk's identification and Hambright's testimony about his investigation, Plaintiff was found guilty of one count of armed robbery and felony firearm.

29.     On October 17, 2016, at the age of 55, Plaintiff was sentenced to serve 25-50 years in prison.  It was, for all intents and purposes, a death sentence.

## POST-CONVICTION DEVELOPMENTS

30.     After years of unsuccessful appeals, Plaintiff's case was undertaken by the Michigan Innocence Clinic at the University of Michigan Law School ("MIC").  They submitted their investigative findings to the newly formed Conviction Integrity Unit (CIU) of the Macomb County Prosecutor's Office, headed by Director, Gail Pamukov.

31.     The CIU conducted its own investigation into Plaintiff's conviction and discovered exculpatory and impeachment evidence that was never disclosed by the OIC, Hambright, to the trial prosecutor, Sunita Doddamani, and consequently not disclosed to Howell's defense attorney.  The exculpatory/impeachment evidence was that of a "serial 7-11" robber in Macomb County at or near the time of the instant robbery.  The Macomb County Prosecutor's Office press release announcing Plaintiff's exoneration, stated:

> A 7-11 store on Ten Mile in Warren was robbed on July 16, 2014,
> August 10, 2014, and August 15, 2014.  A 7-11 store on Harper Ave.
> in St. Clair Shores was robbed on July 25, 2014.  Finally, on August
> 20, 2014, *the same 7-11 store that Howell was convicted of robbing,*

7

*was robbed again*. The serial armed robber, i.e. a possible alternative suspect, was just recently discovered.  (Emphasis added).

32.    In the MCPO press release announcing the exoneration, Macomb County Prosecutor, Peter J. Lucido, stated:

> I take my oath of office and ethical obligations seriously, which requires that I seek to remedy a conviction if it appears that the defendant did not commit the crime he is convicted of.  As the top law enforcement official in Macomb County, I understand that community safety is not served if the wrong person is in prison, and while the actual perpetrator roams free.
> *Id*.

33.    On March 20, 2023, because of new evidence discovered in the CIU investigation and the work of the MIC, an order was entered in Macomb County Circuit Court vacating Plaintiff's conviction and dismissing the case.

34.    The Stipulation and Order to Dismiss and Vacate Conviction and Sentence, dated March 20, 2023, stated, in pertinent part:

> The assistant prosecuting attorney's file in this matter did not contain any information regarding the serial armed robberies.
>
> Because of the above, the jury did not know about a possible alternative suspect.  In particular, the jury did not know about the series of armed robberies that occurred from April – August 2014, which involved 7-11's close to the 7-11 that Howell is convicted of robbing, including a second one at the same 7-11.  The jury did not know that the physical description of the serial armed robber was close to that initially provided by the 7-11 clerk in the Howell matter. The jury did not know that many of the facts related to the commission of the serial armed robberies were similar to those in the Howell matter.  The foregoing is significant since there was only one eyewitness to the Howell armed robbery and his description and identification by the clerk was pivotal to his conviction.

8

35. Mack Howell was set free from prison on March 20, 2023.

36. From the date of his arrest, on August 8, 2015, to his exoneration on March 20, 2023, Mack Howell spent **2,782 days,** or **7 years, 7 months, and 13 days** in jail and/or prison.

37. As a direct and proximate result of Hambright's conduct, as set forth below, Plaintiff suffered the following injuries and damages:

    a.    Suffering a deprivation of liberty by being wrongfully incarcerated and imprisoned for a period of over 7.5 years;

    b.    Severe emotional distress for the period from his arrest to the present, including, but not limited to, the emotional distress of being charged and convicted of crimes the Defendants knew he did not commit;

    c.    Physical manifestations of emotional distress including, but not limited to, sleeplessness, irritability, loss of appetite, headaches, and other symptoms;

    d.    Fright, shock, indignity, humiliation, outrage, and embarrassment of being wrongfully charged and imprisoned for armed robbery and felony firearm;

    e.    Loss of enjoyment of daily activities;

    f.    Not being able to attend the funerals of family members;

    g.    Restricted and/or complete loss of all forms of personal freedom and physical liberty, including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, personal fulfillment, sexual activity, family relations, recreational activities, and personal expression;

h.    Inadequate health care for his pre-existing medical conditions;

i.    Many of Plaintiff's injuries and damages are likely to be permanent;

j.    Other damages which may be revealed through discovery.

## COUNT I

### 14ᵀᴴ AMENDMENT DUE PROCESS
### *"BRADY"* VIOLATIONS BY HAMBRIGHT

38.    Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

39.    At all times, Plaintiff had a constitutional right not to be deprived of due process because of the withholding of material exculpatory or impeachment evidence by a government officer.

40.    Defendant, Hambright, testified at trial. Hambright sat at the prosecutor's table throughout the trial as OIC.

41.    Hambright failed to disclose material exculpatory and impeachment evidence to the prosecutor in violation of his constitutional obligation under *Brady v Maryland*, 373 U.S. 83 (1963), and its progeny, which resulted in a trial "[not] worthy of confidence," *Kyles v. Whitley,* 514 U.S. 419, 434 (1995). Such conduct constitutes a claim for a due process "*Brady* violation" under the 14th Amendment.

42.    Hambright failed to disclose to the prosecutor his knowledge of a

serial robber of 7-11s in the spring and summer of 2014 who matched Ms. Gaston's original description of the robber from the April 3, 2014, robbery and who was convicted of five robberies of 7-11 stores, or that he deliberately and knowingly fabricated his "experiment" results to suggest that the robber of the 7-11 store was 5'6" and of medium build.

43.     Plaintiff's right to *Brady* evidence, and the police officer's constitutional duty to turn over material and apparent *"Brady"* evidence of an identifiable alternate suspect, were clearly established before the start of Plaintiff's criminal trial in August 2016.  *See Bies v. Sheldon*, 775 F.3d 386, 400 (6th Cir. 2014) ("While the State is not necessarily required to disclose every stray lead and anonymous tip, it must disclose the existence of 'legitimate suspect[s].' ") (quoting *D'Ambrosio v. Bagley*, 527 F.3d 489, 499 (2008)).

44.     Hambright's due process violation was a direct and proximate cause of Plaintiff's wrongful conviction and imprisonment.

## PRAYER FOR DAMAGES

WHEREFORE, Plaintiff, MACK HOWELL, prays for damages against Defendant for his wrongful detention and imprisonment, in violation of the Constitution, including:

 a. Past and future compensatory damages as to Defendant, Hambright, in a minimum amount of Thirty Million Dollars (**$30,000,000.00**);

 b. Punitive damages as to Defendant, Hambright, in a minimum amount of

11

Twenty Million Dollars **($20,000,000.00);**

c. Reasonable attorney fees and costs pursuant to 42 U.S.C. §1988;

d. Costs and disbursements of this action pursuant to 42 U.S.C. §1920; and,

e. Such other and further relief that is just and proper.

MUELLER LAW FIRM

*s/Wolfgang Mueller*
WOLFGANG MUELLER (P43728)
JOHN WM. MARTIN, JR. (P42266)
Attorneys for Plaintiff
41850 W. Eleven Mile, Suite 101
Novi, MI 48375
(248) 489-9653
wolf@wolfmuellerlaw.com
john@wolfmuellerlaw.com

Dated: August 28, 2023

## **JURY DEMAND**

Plaintiff, by and through his attorneys, MUELLER LAW FIRM, demands a jury trial in this matter.

MUELLER LAW FIRM

*s/Wolfgang Mueller*
WOLFGANG MUELLER (P43728)
JOHN WM. MARTIN, JR. (P42266)
Attorneys for Plaintiff
41850 W. Eleven Mile, Suite 101
Novi, MI 48375
(248) 489-9653
wolf@wolfmuellerlaw.com
john@wolfmuellerlaw.com

Dated: August 28, 2023

13