UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MACK HOWELL, individually;

      Plaintiff,

                                    No.   23-cv-12202

-v-                             Hon. Robert J. White

MATTHEW HAMBRIGHT,
in his individual capacity;

      Defendant.

---

## SECOND AMENDED COMPLAINT AND RELIANCE ON JURY DEMAND

NOW COMES the Plaintiff, MACK HOWELL, individually, by and through his attorneys, MUELLER LAW FIRM, by WOLFGANG MUELLER and JOHN WM. MARTIN, JR., and files his Second Amended Complaint against the Defendant, MATTHEW HAMBRIGHT ("HAMBRIGHT"), in his individual capacity, in this civil action, stating unto this Court as follows:

1.     This is an action for damages brought pursuant to 42 U.S.C. §§1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, against Defendant Hambright.

2.     Jurisdiction is founded upon 28 U.S.C. §1331 and 28 U.S.C. §1343.

3.     Forum is proper based on the situs of the incident, which occurred in the City of Eastpointe, Macomb County, Michigan, within the Eastern District of Michigan.

4. At all pertinent times Plaintiff, Mack Howell, was a United States citizen.

5. At all pertinent times, Hambright was employed as a police officer by the Eastpointe Police Department ("EPD") and was acting under color of law.

6. Hambright, as a sworn police officer, had taken an oath, the Law Enforcement Code of Ethics, that stated in pertinent part: *"As a sworn police officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice."*

### GENERAL ALLEGATIONS

7. On April 3, 2014, at approximately 12:53 a.m., a 7-11 convenience store was robbed at 18700 Ten Mile Rd. in Eastpointe, Michigan. At the scene, the store clerk described the robber to Eastpointe police as a black male, approximately 6'0'' tall with a medium build, wearing black pants, black hoodie, and a black mask obscuring most of his face except the eyes.

8. The robber carried an empty cardboard box in his hands when he came to the counter. He claimed he had a gun but never showed it. He grabbed several bills from the cash register before running out of the store, dropping the cardboard box and a $20 bill.

2

9.      During the police investigation, Brian Dobrzycki, a canine handler from the Roseville PD, was called.  Instead of having the canine begin its track in the store where the robber had dropped the $20 and cardboard box, the handler started the track at the front door, which had been contaminated by the presence of police, the clerk, and customers.

10.     The canine "hit" on a can of beer in a paper bag near a trash can just outside the entrance door on the north side of the building.  The beer can also contained a straw.

11.     In July 2014, the MSP sent Hambright a facsimile report indicating that DNA test results from the beer can confirmed a match to Plaintiff.  From that point forward, Hambright decided that Plaintiff was the perpetrator.  The straw also contained DNA of an unknown female.

12.     Knowing that the perpetrator spent time on the east side of the building, near the store's trash dumpster, Hambright intentionally and falsely reported that "the east side of the building is where the brown bag and beer can was found that had Howell's DNA on it."  Hambright knew that the "brown bag and beer can" had been found in front of the store (north side) by a trash receptacle next to the 7-11 entrance doors.

13.     After learning of Plaintiff's identity and physical description (5'6" and approximately 200 lbs.), Hambright decided to review the store's video

3

surveillance.

14.     Upon review, Hambright conducted what can only be described as an amateurish forensic experiment to try to determine the height of the perpetrator. Having conducted the experiment, Hambright deliberately and falsely claimed that the perpetrator was 5'6" tall, (ironically the same height as Plaintiff, Hambright's pre-determined perpetrator), despite knowing that the perpetrator was closer to the 6'0" description given by the store clerk.

15.     Hambright reported that he looked up Mack Howell in state databases and determined that, as of July 2013, Howell was 5'5", 180 lbs.

16.     Hambright then called the store clerk and explained that there was a DNA match on the suspect and described the suspect's height and weight. Hambright then asked the clerk if she was "sure" about the height of the perpetrator.  The clerk responded that she was not certain about the height but that the robber was taller than her own height of 5'4 1/2".  Also, for the first time, the robber's weight became 180 lbs.

17.     In the summer of 2014, there was a string of robberies of 7-11 stores in Macomb County perpetrated by a black male.  On August 20, 2014, the same 7-11 store at 18700 Ten Mile Rd. in Eastpointe was robbed. The robber was caught near the store by police who had been surveilling him for some time.

18.     The serial robber, Albert Arthur, Jr., was 5'10", 170 lbs. at the time of

4

his arrest.

19.    Hambright, the OIC from the subject April 3, 2014, 7-11 robbery, was also the OIC on the August 20, 2014, robbery case.

20.    On September 19, 2014, Hambright visited the store clerk at her house.  He showed the clerk a "6-pack" photo lineup containing Plaintiff's photograph along with five "fillers."

21.    Hambright, the OIC, deliberately chose to administer the photo array himself instead of using a "blind" procedure, where the person administering the photo identification procedure knows nothing about the case, which would minimize the risk of suggestiveness influencing the procedure and rendering any identification unreliable.

22.    Before showing the clerk the photo array, Hambright told her the suspect was shorter than the individual she described on the night of the robbery. He then showed her the array, asking her to select the person she thought robbed the store.

23.    Given Hambright's knowledge that the clerk only saw the eyes of the robber, he deliberately chose photographs of four of the five fillers in the array that did not depict the individuals with their eyes wide open.  Only one filler, number five, had his eyes wide open clearly showing the whites of his eyes, like Plaintiff.

24.    Hambright's method of rigging the photo array effectively made the

5

identification procedure a "coin toss" as to who the clerk might select, since she previously reported that she only saw the robber's eyes during the robbery and only two of the photographs (Plaintiff and #5) clearly depicted the whites of the eyes.

25.    Of the six individuals in the photo array, the store clerk first selected #5.  Following that incorrect selection, Hambright asked the clerk, "Are you sure?" The clerk responded that she was unsure; she then covered up each photo except for the eyes.  Given that Plaintiff was the only other individual with his eyes wide open in the photo array, it was almost a foregone conclusion that the clerk would select him, which she did.

26.    Following the clerk's selection of Plaintiff, Hambright did not again ask her if she was sure of her pick, although he reported that he did.

27.    The illegal identification procedure was designed by Hambright to increase the chance of a false identification by the store clerk to manufacture probable cause for an arrest and prosecution of Mack Howell, whom Hambright was certain was the robber.

28.    Hambright never told the clerk that another robber matching her original description had been caught.  He never mentioned that the same robber had robbed five other 7-11 stores that summer.  He never mentioned that the robber in the other robberies wore all black clothing, as had the robber in the subject

robbery.  He never mentioned that Mack Howell was 53 years old.  He never mentioned that Howell was only 5'6" and 200 lbs.

29.     Hambright never showed the clerk a photo array with the serial robber in it, despite having arrested him the previous month.

30.     Hambright documented the identification process in his report, stating, "I showed her the photo lineup.  Gaston spent time looking at the photos and initially focused on #5.  She then covered the lower half of the face of #5 and then did so to all the other photos as well.  She advised that during the robbery the lower portion of the suspect's face was covered so she wanted to just see their eyes."

31.     Hambright deliberately chose not to include in his report that the clerk initially selected #5 and only selected Plaintiff after Hambright asked her, "Are you sure?"

32.     Based on the store clerk's identification of Plaintiff, Hambright filed a warrant request with the prosecutor's office.

33.     Prior to filing the warrant request, Hambright had spoken to the 7-11 store owner, Fazal Abbas, who advised him that he viewed the store outside surveillance video and saw the robber take a box from the dumpster on the east side of the store before entering the store.  Abbas told him that the robber had nothing else in his hands.  Hambright omitted that crucial fact in his police report

7

and warrant request.

34.     On or about December 16, 2014, a warrant was signed for Plaintiff's arrest.

35.     At the Preliminary Exam, the clerk identified Plaintiff as the perpetrator.

36.     At the Preliminary Exam, Hambright testified about the photo identification procedure.  He deliberately chose not to mention that the store clerk had originally selected another person (#5) from the photo array and only selected Plaintiff after Hambright asked her, "Are you sure?"

37.     At and before Plaintiff's August 2016 trial, Hambright never disclosed to the prosecutor (or the store clerk) that he knew of the existence of a serial 7-11 robber who was convicted of robbing several 7-11 stores in Macomb County during the spring and summer of 2014 and matched the store clerk's original description of the robber.

38.     Hambright never disclosed to the prosecutor (or the store clerk) that he was the OIC of the 7-11 robbery at the same Eastpointe location where the alternate suspect, Albert Arthur Jr., was arrested.  Hambright never disclosed to the prosecutor or clerk that Arthur pleaded *nolo contendre* to five such robberies in May 2015, before Plaintiff was arrested, and was in prison at the time of Plaintiff's trial.

39. At and before trial, Hambright never disclosed to the prosecutor that he knew that Plaintiff was not the person identified in the surveillance video and that his "experiment" was inaccurate when he suggested the perpetrator was 5'6".

40. On August 29, 2016, based only upon the clerk's identification and Hambright's testimony about his investigation, Plaintiff was found guilty of one count of armed robbery and felony firearm.

41. On October 17, 2016, at the age of 55, Plaintiff was sentenced to serve 25-50 years in prison. It was, for all intents and purposes, a death sentence.

## POST-CONVICTION DEVELOPMENTS

42 After years of unsuccessful appeals, Plaintiff's case was undertaken by the Michigan Innocence Clinic at the University of Michigan Law School ("MIC"). They submitted their investigative findings to the newly formed Conviction Integrity Unit (CIU) of the Macomb County Prosecutor's Office, headed by Director, Gail Pamukov.

43. The CIU conducted its own investigation into Plaintiff's conviction and discovered exculpatory and impeachment evidence that was never disclosed by the OIC, Hambright, to the trial prosecutor, Sunita Doddamani, and consequently not disclosed to Howell's defense attorney. The exculpatory/impeachment evidence was that of a "serial 7-11" robber in Macomb County at or near the time of the instant robbery. The Macomb County Prosecutor's Office press release

announcing Plaintiff's exoneration, stated:

> A 7-11 store on Ten Mile in Warren was robbed on July 16, 2014, August 10, 2014, and August 15, 2014.  A 7-11 store on Harper Ave. in St. Clair Shores was robbed on July 25, 2014.  Finally, on August 20, 2014, *the same 7-11 store that Howell was convicted of robbing, was robbed again*.  The serial armed robber, i.e. a possible alternative suspect, was just recently discovered.  (Emphasis added).[1]

44.    In the MCPO press release announcing the exoneration, Macomb County Prosecutor, Peter J. Lucido, stated:

> I take my oath of office and ethical obligations seriously, which requires that I seek to remedy a conviction if it appears that the defendant did not commit the crime he is convicted of.  As the top law enforcement official in Macomb County, I understand that community safety is not served if the wrong person is in prison, and while the actual perpetrator roams free.
> *Id*.

45.    On March 20, 2023, because of new evidence discovered in the CIU investigation and the work of the MIC, an order was entered in Macomb County Circuit Court vacating Plaintiff's conviction and dismissing the case.

46.    The Stipulation and Order to Dismiss and Vacate Conviction and Sentence, dated March 20, 2023, stated, in pertinent part:

> The assistant prosecuting attorney's file in this matter did not contain any information regarding the serial armed robberies.

---

[1] The CIU also discovered evidence of similar robberies of 7-11 stores on April 29, 2014, in Eastpointe and August 17, 2014, in Roseville.  Each of those robberies had similar descriptions of the robber and similar *modus operandi* to the April 3, 2014, robbery.  They were not included in the CIU Stipulation and Order Vacating Convictions, March 20, 2023, because Albert Arthur, Jr. did not plead No Contest to those robberies.  Defendant Hambright was aware of both robberies.

Because of the above, the jury did not know about a possible alternative suspect. In particular, the jury did not know about the series of armed robberies that occurred from April – August 2014, which involved 7-11's close to the 7-11 that Howell is convicted of robbing, including a second one at the same 7-11. The jury did not know that the physical description of the serial armed robber was close to that initially provided by the 7-11 clerk in the Howell matter. The jury did not know that many of the facts related to the commission of the serial armed robberies were similar to those in the Howell matter. The foregoing is significant since there was only one eyewitness to the Howell armed robbery and his description and identification by the clerk was pivotal to his conviction.

47.     Mack Howell was set free from prison on March 20, 2023.

48.     From the date of his arrest, on August 8, 2015, to his exoneration on March 20, 2023, Mack Howell spent **2,782 days,** or **7 years, 7 months, and 13 days** in jail and/or prison.

49.     As a direct and proximate result of Hambright's conduct, as set forth below, Plaintiff suffered the following injuries and damages:

   a.     Suffering a deprivation of liberty by being wrongfully incarcerated and imprisoned for a period of over 7.5 years;

   b.     Severe emotional distress for the period from his arrest to the present, including, but not limited to, the emotional distress of being charged and convicted of crimes the Defendants knew he did not commit;

   c.     Physical manifestations of emotional distress including, but not limited to, sleeplessness, irritability, loss of appetite, headaches, and other symptoms;

   d.     Fright, shock, indignity, humiliation, outrage, and

11

embarrassment of being wrongfully charged and imprisoned for armed robbery and felony firearm;

e. Loss of enjoyment of daily activities;

f. Not being able to attend the funerals of family members;

g. Restricted and/or complete loss of all forms of personal freedom and physical liberty, including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, personal fulfillment, sexual activity, family relations, recreational activities, and personal expression;

h. Inadequate health care for his pre-existing medical conditions;

i. Many of Plaintiff's injuries and damages are likely to be permanent;

j. Other damages which may be revealed through discovery.

## COUNT I

## 14TH AMENDMENT DUE PROCESS "*BRADY*" VIOLATIONS BY HAMBRIGHT

50. Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

51. At all times, Plaintiff had a constitutional right not to be deprived of due process because of the withholding of material exculpatory or impeachment evidence by a government officer.

52. Defendant, Hambright, testified at trial. Hambright sat at the

12

prosecutor's table throughout the trial as OIC.

53.     Hambright failed to disclose material exculpatory and impeachment evidence to the prosecutor in violation of his constitutional obligation under *Brady v Maryland*, 373 U.S. 83 (1963), and its progeny, which resulted in a trial "[not] worthy of confidence," *Kyles v. Whitley,* 514 U.S. 419, 434 (1995).  Such conduct constitutes a claim for a due process "*Brady* violation" under the 14th Amendment.

54.     Hambright failed to disclose to the prosecutor his knowledge of a serial robber, Arthur Albert, Jr., who robbed 7-11s in the spring and summer of 2014 who matched the store clerk's original description of the robber from the April 3, 2014, robbery and who was convicted of five robberies of 7-11 stores. Hambright was also aware of two other robberies (April 29, 2014, in Eastpointe and August 17, 2014, in Roseville) which had similar descriptions of the robber and similar *modus operandi* but were never solved or charged.  Additionally, Hambright failed to disclose to the prosecutor that he deliberately and knowingly fabricated his "experiment" results to suggest that the robber of the 7-11 store was 5'6" and of medium build.

55.     Plaintiff's right to *Brady* evidence, and the police officer's constitutional duty to turn over material and apparent *"Brady"* evidence of an identifiable alternate suspect, were clearly established before the start of Plaintiff's criminal trial in August 2016.  *See Bies v. Sheldon*, 775 F.3d 386, 400 (6th Cir.

13

2014) ("While the State is not necessarily required to disclose every stray lead and anonymous tip, it must disclose the existence of 'legitimate suspect[s].' ") (quoting *D'Ambrosio v. Bagley*, 527 F.3d 489, 499 (2008)).

56. Hambright's due process violation was a direct and proximate cause of Plaintiff's wrongful conviction and imprisonment.

## COUNT II

### UNDULY SUGGESTIVE AND UNNECESSARY IDENTIFICATION PROCEDURE BY DEFENDANT

57. Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

58. At all times, Plaintiff had a constitutional right of due process, guaranteed by the 14th Amendment, and to a fair trial, guaranteed by the Sixth Amendment, to be free from police officers employing unduly suggestive and unnecessary witness identification procedures to manufacture identification of suspects in a crime.

59. Defendant, Hambright, deliberately and knowingly employed an unduly suggestive photo array procedure that rendered the store clerk's identification of Plaintiff unreliable under the totality of circumstances of the case.

60. The illegal show-up procedure was designed by Hambright to increase the chance of a false identification to manufacture probable cause for an arrest and prosecution.

14

61.     Defendant's illegal photo identification procedure violated Plaintiff's right to due process and resulted in him not receiving a fair trial.

62.     Plaintiff's right to be free from an identification that was unduly suggestive was clearly established long before 2014.  *Moore v. Illinois*, 434 U.S. 220, 227; 98 S.Ct. 458; 54 L.Ed.2d 424 (1977) ("Due process protects criminal Defendant against "the introduction of evidence of, or tainted by, unreliable pretrial identifications obtained through unnecessarily suggestive procedures.").

## COUNT III

## FEDERAL MALICIOUS PROSECUTION BY DEFENDANT

63.     Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

64.     At all times, Plaintiff had a constitutional right, secured by the 4th and 14th Amendments, not to be seized and deprived of liberty as a result of an unduly suggestive identification procedure and knowingly or recklessly made false statements or material omissions by a police officer in order to manufacture probable cause.

65.     Defendant influenced the initiation of criminal prosecution when he deliberately employed an unduly suggestive photo identification procedure that resulted in an unreliable identification of Plaintiff by the store clerk, which was material to a finding of probable cause for arrest and continued detention and

15

Plaintiff's ultimate conviction.

66.     Defendant further influenced or participated in the initiation of criminal prosecution when he deliberately and knowingly made false statements and material omissions of evidence in his Investigator's Report and testimony to a judge in support of the arrest warrant, which was material to a finding of probable cause and Plaintiff's ultimate arrests and continued detention.

67.     But for Defendant's unduly suggestive identification procedure, and deliberate false statements and material omissions in reports and Preliminary Exam testimony, probable cause would have been lacking; such conduct constituting a claim of federal "malicious prosecution." *Mills v. Barnard*, 869 F.3d 472, 480 (6th Cir. 2017) ("The prototypical case of malicious prosecution involves an official who fabricates evidence that leads to the wrongful arrest or indictment of an innocent person."). *See also Franks v. Delaware*, 438 U.S. 154; 98 S.Ct. 267; 457 L.Ed.2d 667 (1978).

68.     Plaintiff's cause of action for federal malicious prosecution became complete when criminal charges were voluntarily dismissed by the Macomb County Prosecutor's Office on March 20, 2023.

69.     Plaintiff's constitutional right to be free from illegal seizure and continued detention without probable cause based upon an unduly suggestive and unnecessary identification procedure, and false statements or material omissions by

16

a government officer acting in an investigative capacity to manufacture probable cause for arrest and continued detention, was clearly established before April 3, 2014, the earliest date for Defendant's wrongful conduct. *See Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019).

## COUNT IV

## STATE LAW MALICIOUS PROSECUTION BY DEFENDANT

70. Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

71. The underlying criminal proceedings against Plaintiff ultimately terminated in his favor with a dismissal of the charges in state court on March 20, 2023.

72. The criminal investigation and prosecution were undertaken without probable cause or good faith and with malice. They were not undertaken with the intention of bringing Plaintiff to justice for having committed the alleged robbery. Hambright manufactured probable cause by employing an unduly suggestive photo identification procedure and choosing not to disclose to the prosecutor that a serial armed robber of 7-11 stores, including the same store, had been arrested before Hambright applied for the warrant. Hambright knew that, absent the fabricated identification procedure, probable cause for arrest or continued detention was lacking.

17

73.     As a direct and proximate result of Defendant's malicious prosecution, Plaintiff was charged and convicted of crimes he did not commit, causing him to suffer the special injuries and damages set forth above.

## **PRAYER FOR DAMAGES**

WHEREFORE, Plaintiff, MACK HOWELL, prays for damages against Defendant for his wrongful detention and imprisonment, in violation of the Constitution, including:

a. Past and future compensatory damages as to Defendant, Hambright, in a minimum amount of Thirty Million Dollars **($30,000,000.00)**;

b. Punitive damages as to Defendant, Hambright, in a minimum amount of Twenty Million Dollars **($20,000,000.00);**

c. Reasonable attorney fees and costs pursuant to 42 U.S.C. §1988;

d. Costs and disbursements of this action pursuant to 42 U.S.C. §1920;

e. All damages allowed under MCL 600.2907 and the common law of the State of Michigan, together with pre-judgment interest, costs and attorney fees allowed under state law; and

f. Such other and further relief that is just and proper.

18

MUELLER LAW FIRM

*s/Wolfgang Mueller*
WOLFGANG MUELLER (P43728)
JOHN WM. MARTIN, JR. (P42266)
Attorneys for Plaintiff
41850 W. Eleven Mile, Suite 101
Novi, MI 48375
(248) 489-9653
wolf@wolfmuellerlaw.com
john@wolfmuellerlaw.com

Dated:  December 16, 2024

## **RELIANCE ON JURY DEMAND**

Plaintiff relies on his previously filed jury demand in this matter.

MUELLER LAW FIRM

*s/Wolfgang Mueller*
WOLFGANG MUELLER (P43728)
JOHN WM. MARTIN, JR. (P42266)
Attorneys for Plaintiff
41850 W. Eleven Mile, Suite 101
Novi, MI 48375
(248) 489-9653
wolf@wolfmuellerlaw.com
john@wolfmuellerlaw.com

Dated:  December 16, 2024

19

**CERTIFICATE OF SERVICE**

I hereby certify that on 12/16/24, I served the foregoing instrument to all counsel of record and Clerk of the Court by using the ECF system.

I further hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: N/A

s/Wolfgang Mueller                .
MUELLER LAW FIRM
41850 W. Eleven Mile, Suite 101
Novi, MI 48375
248-489-9653
wolf@wolfmuellerlaw.com
(P43728)
