# **<u>Exhibit DD</u>**

{02108551-1 }

·FILED by Macomb County Circuit Court
3/20/2023 3:08:06 PM
Service, Submitted, and File

 

2015-003353-FC
PEO VS. HOWELL, N

# STATE OF MICHIGAN

## IN THE 16th CIRCUIT COURT FOR THE COUNTY OF MACOMB

**PEOPLE OF THE STATE OF MICHIGAN**

        **Plaintiff,**

**v.**


**MACK JOHNSON HOWELL,**

        **Defendant.**

_____/

**Case Number: 15-3353 FC**
**HON. EDWARD A. SERVITTO JR.**

| | |
|---|---|
| **PETER J. LUCIDO (P41237)**<br>Prosecuting Attorney<br>Macomb County, Michigan<br>BY: **Gail M. Pamukov (P43929)**<br>Assistant Prosecuting Attorney<br>Chief, Conviction Integrity Unit<br>Macomb County Administration Building<br>1 South Main St., 3rd Floor<br>Mount Clemens, MI 48043<br>gail.pamukov@macombgov.org<br>(586) 469-5592<br>Attorney for Plaintiff | **David A. Moran (P45353)**<br>Clinical Professor of Law<br>Michigan Innocence Clinic<br>701 S State St,<br>Ann Arbor, MI 48109-3901<br>morand@umich.edu<br>(734) 615-5419<br>Attorney for Defendant |

## STIPULATION AND ORDER
## TO DISMISS AND VACATE CONVICTION AND SENTENCE

The Macomb County Prosecutor's Office Conviction Integrity Unit (CIU) investigated Mack Johnson Howell's (Howell) case after a referral from the University of Michigan Innocence Clinic (MIC) which represents Mr. Howell. [1]

The following are their Stipulated Facts:

1.  Mack Johnson Howell (Howell) was found guilty by a jury on August 29, 2016, of one count of armed robbery contrary to MCL 750.529. The foregoing occurred on April 3, 2014, at a 7-11 located at 18700 Ten Mile Road, Eastpointe, MI.

---

[1] MIC conducted an investigation of this matter separate from the CIU.

Page 1 of 7

 

2. Howell was sentenced on October 17, 2016, as a fourth habitual offender and sentenced to 300- 600 months, credit for 434 days, and was to register as a sex offender under SORA.[2]

3. The main issue at trial concerned the identity of the perpetrator.

4. The in-store video shows the armed robbery took place in 86 seconds. During that time, the perpetrator quickly walked into the store. He was dressed in all black and had a black cap on his head. His face was fully masked except for his eyes. He grabbed the money from the cash register and drawer with ungloved hands, dropped a $20 bill on the floor, briskly walked out of the store, and was seen "running" away.

5. The only eyewitness was the 7-11 clerk. She told the arriving officer the perpetrator was a black male, medium build, approximately 6' 0" tall, wearing all black, and had a black mask over his face. She said all she could see were his eyes. Although she did not see a gun, the perpetrator threatened to "shoot" her several times. She reported she was "scared for her life". She did not smell intoxicants on the perpetrator's breath. Consistent with the in-store video, she saw the robber "running" away from the store after the robbery. She did not report that the perpetrator dropped a bag outside the store as he ran away.

6. The store owner was the only witness of the outside video.[3] He observed the perpetrator walk back and forth between the store dumpsters and the store entrance several times. He noted that the perpetrator picked a box out of the "garbage".[4] The owner did not report the perpetrator drinking from any item prior to the robbery; or that the perpetrator dropped a bag as he approached the store.[5] The owner did not report that the perpetrator crushed/smashed any object either before or after the robbery. He noted that the perpetrator was on foot and "ran" toward the dumpsters after the robbery.

7. Eastpointe police arrived shortly after the robbery. The arriving officer entered the store and spoke to the clerk. Another officer checked the area and assisted in securing the perimeter. An evidence technician arrived, entered the store, photographed the inside and outside, and processed the scene for physical evidence. Another officer was stationed immediately outside the store by the open door entrance.

8. Next on the scene was a K9 unit. Despite the scene having been heavily trafficked by the clerk, arriving officer, evidence technician, robber, and most likely the securing officer and members of the public, the K9 was taken into the store, but not given anything touched by the perpetrator to scent. It started its track outside the store. The K9 hit on a bag that was outside, on the ground, very close to a trash bin several feet from the entrance to the store. The K9 continued east around the building and lost the "scent". The bag was secured as evidence.

---

[2] The Court noted at sentencing that MCL 769.12 required a mandatory minimum of 25 years.

[3] The outside video was not immediately secured and per the owner was deleted via the 7-11's normal process.

[4] Per the in store video, the perpetrator carried a plastic covered box folded over his arm into the 7-11 and placed it on the counter where he left it.

[5] The store owner's testimony was confusing. At one point he testified the perpetrator dropped something outside the entrance as he left. The only thing recovered at the scene near the entrance, inside the store, was a $20.00 bill the perpetrator dropped as he left the 7-11.

Howell                                    MDOC                                    000004

9. The bag the K9 hit on contained a Milwaukee Best 24-ounce beer can with a straw in it. (Beer can/straw). A recent inspection showed that the can was smashed in the middle. A follow-up with the MSP confirmed that the can was smashed when it was first processed after the robbery in 2014.

10. The MSP processed the beer can for fingerprints and DNA. An AFIS quality print was recovered from the outside of the beer can. It was not Howell's. It has been in AFIS since 2014 and there have been no matches.

11. In June 2014, the MSP reported that "two or more donors contributed to the beer can and straw", one of which was male. On June 30, 2014, the MSP reported that subject to confirmation, one of the DNA samples matched Howell. Both samples were placed into CODIS. The unidentified DNA sample remains in CODIS without any matches.

12. During its investigation, the CIU recently discovered that between April 2014 and August 2014, there were several serial armed robberies that took place at several 7-11's in south Macomb County. They include:

   ➤ 7/16/2014, 8/10/14, and 8/15/2014: (3) Armed Robberies at the same 7-11 in Warren, located at 14971 E. Ten Mile Road.

   ➤ 7/25/2014: (1) Armed Robbery at a 7-11 located at 21701 Harper Avenue, St. Clair Shores.

   ➤ 8/20/14: (1) Armed Robbery at a 7-11 located at 18700 Ten Mile Eastpointe. This is the same 7-11 that was robbed on 4/3/2014 and which Howell was convicted of robbing.

13. All of the above 7-11's were located fairly close together as shown by a cell phone map. The serial armed robberies involved a perpetrator that was masked; ungloved; quickly entered the 7-11's; and in all cases but one, displayed a gun; wore eyeglasses during some of the robberies; was always on foot, and quickly left the store after getting cash from the clerk's register. Many of these facts are similar to the April 3, 2014, armed robbery for which Howell was convicted.

14. The arrest records show the serial armed robber's height as 5'9 and weight as 170 pounds. OTIS shows the serial armed robber's height and weight as 5'10, 170 pounds. Both are closer to the 7-11 clerk's original description of the robber in the Howell case. I.e., that perpetrator was about "6'0 feet" and of a "medium build".

15. In the summer/fall of 2014, after the MSP reported that DNA on the beer can/straw had two donors, one of which matched Howell, the OIC in the Howell case pulled his OTIS description. He found that Howell was 5'5 -5'6, 140-205 pounds, i.e. 6 inches shorter than the clerk's original description of 6.0".

Howell MDOC 000005

16. According to the 7-11 clerk, prior to a photo lineup in the Howell case, the OIC called and asked her if she could be "wrong about her height and weight" description. On September 19, 2014, the OIC conducted a photo lineup with the clerk in Howell's 7-11 case. The OIC conducting the Howell photo lineup did it at the clerk's home. No other officer was present. No blinded procedure was used. He asked her "to pick the one that robbed the store". She initially picked the wrong person, after the OIC asked her if "she was sure", she picked Howell after using her hands so she could just look at the eyes of those included in the photo lineup.

17. The clerk in the Howell armed robbery was never shown a photo lineup that included the serial armed robber. The OIC in the Howell case and serial armed robbery case was the same.

18. On December 16, 2014, a felony warrant/complaint was authorized charging Howell with one count of Armed Robbery contrary to MCL 750.529. It says in part: "On 4/3/14 ... "Howell had "left" a beer outside the store where he had been lying in wait for some time. The can was hit on by the K9...Howell's DNA was recovered from it; the clerk identified Howell at a photo lineup."

19. Howell was not arrested until August 7, 2015. Prior to Howell's arrest, the serial armed robber's cases were adjudicated and closed. The serial armed robber confessed to the robberies on August 20, 2014, pleaded no contest to the 5 armed robberies outlined in paragraph 12 on May 28, 2015, and was sentenced on July 7, 2015. None of this information was found in the assistant prosecutor's file in Howell's case.[6]

20. The trial in Howell's case was conducted from August 23 - 29, 2016 when Defendant was found guilty of one count of Armed Robbery. The sentencing was on October 17, 2016. (See paragraph 2 above). Howell's appeals to the Michigan Court of Appeals (Case No. 335449) and Michigan Supreme Court (Case No. 157381) were unavailing. A federal habeas petition was placed on hold in *Howell v McCullick*, Case: 2:19-cv-11019. A MCR 6.500 motion was denied on April 1, 2021.

21. New evidence has been discovered during the investigation in this matter that warrants relief.
    It is:

    a. **Medical Records/Testimony:**

    No medical records or testimony from any of Howell's doctors was introduced at trial. Below is a summary of records that show that Howell was physically incapable of committing an 86-second armed robbery and "run" from the 7-11. And the clerk's initial description in no way matches Howell's.

---

[6] The serial armed robber's codefendant pled to one count of armed robbery on 10/10/14 and was sentenced on 11/13/14 for the 8/20/14 robbery.

 

During 2013-2014, Howell saw his primary care doctor almost monthly. As early as January 13, 2013, records show Howell had long standing pain down both legs, worse with activity or movement, and that he used a cane. Records further show his leg pain, particularly on the right, was steadily worsening. Four days after the robbery he was seen by his doctor and a workup began to determine a diagnosis. On September 30, 2014, Howell had the first of six procedures to open very significant arterial blockages in his right and left legs (9/30/14; 10/10/14; 3/24/15; 5/2/18; 7/16/18; 10/18/21). A previously rejected SSI claim for disability was approved on January 8, 2015, with a finding of disabling "peripheral vascular disease". The disability claim was then dated to September 24, 2014, i.e. the date of the updated SSI application.

The medical records also show Howell's height was about 5'6 and that he was heavy set. The foregoing is nowhere close to the almost 6'0" feet, medium build initially reported by the 7-11 clerk.

b. **Unreliable Dog Track:**

No expert was presented at trial to explain the K9 hit to the paper bag covered beer can/straw was not proof that it was connected to the crime and why the dog track was unreliable, to begin with.

An expert in applied animal behavior was retained post-conviction. James Ha, Ph.D.,[7] opined that the "hit" by the K9 on the paper bag covered beer can "is not at all sufficient to prove the paper bag or its contents were connected to the suspect". That a "dog's behavior, even if the dog is well trained and well handled, is too prone to error to itself be scientifically valid evidence". Further, "dog tracking is most reliable when the dog starts its track where the suspect lingered for an extended period of time". This is especially the case when the track starts at a place that is usually "heavily trafficked." The in-store video showed "the cashier walking through that area", and police may have done so as well, which contaminated the scene."

c. **Photogrammetry:**

The clerk told the arriving police officer that the suspect was "a black male, medium build, approximately 6'0 feet tall".

Two different experts in photogrammetry were retained post-conviction. Eugene Levin, PhD., opined the suspect was 5'10, plus/minus one inch. Sorin Popescu, PhD., opined the suspect's height was 5'8.[8] Both opinions are very close to the height of the serial robber reported by Eastpointe, 5'9, and the OTIS height of 5'10. Both height opinions are taller than Howell's reported OTIS height of 5'5 - 5'6 which the OIC relied on.

---

[7] Dr. Ha is an Emeritus Research Professor at the University of Washington and a certified applied animal behaviorist.

[8] Dr. Levin is a certified photogrammetrist and an Associate Professor of Geospatial Engineering at Michigan Technological University. Dr. Popescu, is a professor of Remote Sensing at Texas A&M.

 

### d. Eyewitness Identification Expert:

This was primarily an eyewitness identification case. Both pretrial and at trial the defendant's expert was disqualified as an expert in eyewitness identification. An expert in eyewitness identification would have explained the multiple problems with the identification process that occurred in this case and the multiple factors which contribute to misidentification. Jennifer Dysart, PhD., is an expert in eyewitness identification.[9] She was retained recently. After reviewing file materials, she opined as follows:

"The evidentiary value of an eyewitness identification can be assessed by the existence or absence of factors known – empirically – to influence the strength of a witness's memory, the reliability of the identification, and the reliability of the in court testimony. Evidentiary value of an identification is undermined when the factors that have been shown to decrease reliability are present in a particular case, and the more factors present, the less probative an identification will be. In other words, when there are numerous factors present in a case that have been shown to decrease reliability, the result can easily be misidentification of an innocent suspect.

In this case, there were limits on the witness's opportunity to view due to time and the use of a disguise, high levels of stress, cross-race identification, a 5 month delay between the robbery and the photo array, issues with description "accuracy", and consistency, contamination of the witness' memory via police questioning, the use of a non-blind photo array where the witness was told beforehand that the police had a suspect, and the possibility of unconscious transference and commitment effects for the identification of Mr. Howell in the photo array and at trial. In summary, the combination of all these factors significantly decreased the likelihood that an accurate identification could have been made by the victim in this case. The combination of a weak memory for the robber coupled with suggestive identification procedures easily accounts for the selection of Mr. Howell."

### e. Serial Armed Robberies:

The assistant prosecuting attorney's file in this matter did not contain any information regarding the serial armed robberies.

Because of the above, the jury did not know about a possible alternative suspect. In particular, the jury did not know about the series of armed robberies that occurred from April – August 2014, which involved 7-11's close to the 7-11 that Howell is convicted of robbing, including a second one at the same 7-11. The jury did not know that the physical description of the serial armed robber was close to that initially provided by the 7-11 clerk in the Howell matter. The jury did not know that many of the facts related to the commission of the serial armed robberies were similar to those in the Howell case. The foregoing is significant since there was only one eyewitness to the Howell armed robbery and his description and identification by the clerk was pivotal to his conviction.

22. The Macomb County Prosecutor's Office supports the dismissal and vacating of Mr. Howell's conviction and sentence since the discovery of new evidence severely compromises the primary evidence of guilt. There is substantial reason to believe that if this information had been known at the time of the original trial, the result may have been different.

---

[9]Jennifer Dysart, Ph.D., is an Associate Professor of Psychology at the John Jay College of Criminal Justice, New York City. She was retained by the CIU to review this case. She has given testimony as an eyewitness expert 85 times, in multiple states.

Howell          MDOC          000008

Having reviewed the matter, the Court finds that an evidentiary hearing is not necessary under MCR 6.508(B) and adopts the parties' stipulation of facts and law as its ruling under MCR 6.508(E).

Because the requirements of MCR 6.502 and MCR 6.508(D) are met in this case and because it is in the interests of justice, the Judgment of Conviction and Sentence, and the requirement for SORA registration, in this case, is VACATED. The matter is dismissed without prejudice and the record is to be expunged consistent with this order. Mr. Howell is to be released from the MDOC forthwith.

**IT IS ORDERED:**

03/20/2023
Dated: ~~March 17, 2023~~

Hon. Edward A. Servitto, Jr.
16th Circuit Court Judge
/S/ EDWARD A. SERVITTO
CIRCUIT COURT JUDGE, P27800

**PETER J. LUCIDO (P41237)**
Prosecuting Attorney
Macomb County, Michigan
**By: Gail M. Pamukov, APA (P43929)**
Chief Conviction Integrity Unit Macomb
County Prosecutor's Office
Administration Building
1 South Main St., 3rd Floor
Mount Clemens, MI 48043
gail.pamukov@macombgov.org
(586) 469-5592
Attorney for Plaintiff

/s/ David A. Moran - per GMP

David A. Moran (P45353)
Clinical Professor of Law
Michigan Innocence Clinic
701 S State St,
Ann Arbor, MI 48109-3901
morand@umich.edu
(734) 615-5419
Attorney for Defendant