UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MACK HOWELL,

     Plaintiff,

v.

MATTHEW HAMBRIGHT,

     Defendant.

Case No. 23-cv-12202

Honorable Robert J. White

---

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

I.    <u>Introduction</u>

Mack Howell commenced this 42 U.S.C. § 1983 action against City of Eastpointe Police Detective Matthew Hambright. The amended complaint alleges, among other things, that Hambright violated the Fourteenth Amendment to the United States Constitution when he withheld exculpatory evidence from county prosecutors, resulting in Howell's 2016 state conviction for armed robbery.

Before the Court is Hambright's motion for summary judgment, Howell's cross-motion for partial summary judgment, and the associated responses and replies. (ECF Nos. 32, 34, 36-39). The Court will decide the motions without a hearing pursuant to E.D. Mich. LR 7.1(f)(2). For the following reasons, (1)

Hambright's motion for summary judgment is granted, and (2) Howell's cross-motion for partial summary judgment is denied.

II.    Background

    A.    *Factual History*

In the early morning of April 3, 2014, an unknown perpetrator robbed the 7-Eleven store located at the intersection of East 10 Mile and Kelly Roads in Eastpointe, Michigan. (ECF No. 32-2, PageID.730-31).  The suspect carried an empty cardboard container as though it concealed a weapon. (*Id.*, PageID.731; ECF No. 32-4, Counter 0:27-33).  He ordered the store clerk, Rosalyn Gaston, to open the cash register. (*Id.*, PageID.731).  Gaston removed the cash drawer and placed it on the check-out counter. (*Id.*).  The suspect removed some of the cash and left through the front door, where he dropped a $20 bill and the cardboard container. (*Id.*).  Gaston locked the front door and called the police. (*Id.*).

A Roseville Police Department K-9 unit arrived at the scene. (ECF No. 32-9, PageID.1290).  The police dog tracked the perpetrator's scent from the cashier area to a brown paper bag containing a beer can with a straw located outside the store's front door. (*Id.*; ECF No. 32-2, PageID.738, 753).  The dog moved on to the store's parking lot, where it lost the scent. (*Id.*; ECF No. 32-2, PageID.738, 753).  An evidence technician with the Eastpointe Police Department retrieved the cardboard container, the $20 bill, and the beer can with the straw. (ECF No. 32-2, PageID.732).

2

Back in the store, Gaston described the perpetrator to officers as a black male with a medium build, approximately 6 feet tall, wearing black clothing and donning a black ski mask. (*Id.*, PageID.731).

With that information, Eastpointe Police Detective Matthew Hambright assumed charge of the investigation. (*Id.*, PageID.732).  He forwarded the paper bag, beer can, and straw to the Michigan State Police for fingerprint and DNA analysis. (*Id.*).  On June 15, 2014, the Michigan State Police laboratory retrieved two DNA samples from the beer can and straw. (*Id.*, PageID.733).  One of those samples belonged to a male donor. (*Id.*).  Two weeks later, the Michigan State Police traced the male DNA sample to Mack Howell. (*Id.*; ECF No. 32-11, PageID.1295).

On September 19, 2014, Hambright conducted a photo array lineup at Gaston's residence. (ECF No. 32-2, PageID.734-35; ECF No. 32-5, PageID.830, Tr. 64:14-19; ECF No. 32-6, PageID.1009, 1011, Tr. 129:4-5, 131:1-2).  She initially selected the image of someone other than Howell. (ECF No. 32-2, PageID.734; ECF No. 32-5, PageID.832, Tr. 66:21; ECF No. 32-6, PageID.1013, Tr. 133:11-13). Hambright asked her to confirm whether she was sure of her choice. (ECF No. 32-5, PageID.832, Tr. 66:21-22; ECF No. 32-6, PageID.1013, Tr. 133:13-14).  Gaston then covered all the facial features, except for the eyes, of each person depicted in the photo array. (ECF No. 32-2, PageID.734; ECF No. 32-5, PageID.832, Tr. 66:22-25; ECF No. 32-6, PageID.1014, Tr. 134:2-22).  She selected Howell. (ECF No. 32-

3

2, PageID.734; ECF No. 32-5, PageID.36, Tr. 70:18-20; ECF No. 32-6, PageID.1014-15, Tr. 134:22-135:13). Hambright asked her to again confirm whether she was sure of her choice. (ECF No. 32-2, PageID.734; ECF No. 32-6, PageID.1015, Tr. 135:7-9, 16-17). She said she was 100 percent certain that Howell was the perpetrator. (ECF No. 32-5, PageID.838, 840, Tr. 72:8-17, 74:18-22; ECF No. 32-6, PageID.1015, Tr. 135:16-17; *see also* ECF No. 32-2, PageID.734).

Hambright presented an arrest warrant request for Howell, along with the complete investigation file, to the Macomb County Prosecutor's office. (ECF No. 32-2, PageID.735; ECF No. 32-12, PageID.1351, Tr. 54:2-3,; ECF No 32-21, PageID.1599-1600). The prosecutor's office approved the request and charged Howell with armed robbery (ECF No. 32-22, PageID.1602).

But coincident with Hambright's investigation into the April 3 robbery, a string of robberies targeted 7-Eleven stores in lower Macomb County in the spring and summer of 2014. (ECF Nos. 34-7-13). One of the robberies occurred on August 20, 2014, at the same 7-Eleven store that had been robbed the previous April 3. (ECF No. 32-13, PageID.1441-44). When Warren police officers arrested the suspect, Albert Arthur, Jr., Hambright interviewed him in connection with the April 3 robbery. (*Id.*, PageID.1444-45). Although Arthur admitted to several of the robberies – including the August 20 incident – he denied robbing the Eastpointe

4

location on April 3. (ECF No. 32-15, PageID.1460, Tr. 3:15-18; ECF No. 34-16, PageID.2217, Tr. 47:18-19).

Hambright presented an arrest warrant request for Arthur, along with the complete investigation file, to the Macomb County Prosecutor's office as well. (ECF No. 32-33, PageID.1942-45). The prosecutor's office approved the request and charged Arthur with five armed robberies, including the August 20 incident. (ECF No. 32-13, PageID.1446). He pled *nolo contendere* to those charges in July 2015. (*Id.*, PageID.1447). Hambright never identified Arthur as an alternative suspect in the April 3 robbery.

The following month, Detroit police officers caught up with Howell when they arrested him for an unrelated robbery. (ECF No. 32-2, PageID.743). They transported him to the Eastpointe Police Department on his outstanding arrest warrant. (*Id.*). During an interview with Hambright, Howell denied any involvement in the April 3 robbery. (*Id.*, PageID.744-45). Hambright obtained a warrant to retrieve a buccal DNA swab from Howell. (ECF No. 32-26, PageID.1802-03). The Michigan State Police tested the sample and confirmed that Howell's DNA matched the genetic markers lifted from the beer can and straw recovered at the April 3 crime scene. (ECF No. 32-27, PageID.1805).

A state district court conducted Howell's preliminary examination on September 16, 2015. (ECF No. 32-39, PageID.1973). The district judge bound him

over for trial after Gaston positively identified him at the hearing. (ECF No. 34-18, PageID.2247, Tr. 43:14-17).   A jury subsequently convicted Howell of armed robbery in August 2016. (ECF No. 32-8, PageID.1285, Tr. 4:7-9).   The Michigan Court of Appeals affirmed his conviction. *People v. Howell*, No. 335449, 2018 Mich. App. LEXIS 320 (Mich. Ct. App. Feb. 20, 2018).   And the Michigan Supreme Court denied his application for leave to appeal. *People v. Howell*, 502 Mich. 939 (2018).

Howell served about six years in state prison until the University of Michigan Innocence Clinic prevailed upon the Macomb County Prosecutor's office to investigate his case. (ECF No. 32-31, PageID.1930).   The office agreed to vacate the conviction after concluding its review in March 2023. (*Id.*, PageID.1935).   The state circuit judge who vacated Howell's conviction and sentence found that neither the prosecutors who tried Howell's case, nor the jury that convicted him, knew about (1) the series of armed robberies that targeted 7-Eleven stores in the spring and summer of 2014, or (2) Arthur's *nolo contendere* plea to five of those robberies. (ECF No. 32-31, PageID.1935).

B.      *Procedural History*

After the vacatur of his conviction, Howell filed this lawsuit alleging that (1) Hambright's conduct of the September 2014 photo array lineup was unduly suggestive in violation of the Fourteenth Amendment's Due Process Clause, and (2) his failure to disclose information about an alternative suspect, *i.e.*, Arthur, violated

6

*Brady v. Maryland*, 373 U.S. 83 (1963).  The amended complaint also asserts causes of action for malicious prosecution under 42 U.S.C. § 1983 and Michigan law. Hambright now moves for summary judgment on the ground of qualified immunity. (ECF No. 32).  Howell cross-moves for partial summary judgment on the *Brady* violation alone. (ECF No. 34).

III.   Legal Standards

A moving party is entitled to summary judgment where the "materials in the record" do not establish the presence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c).  All the evidence, along with all reasonable inferences, must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

IV.   Analysis

*A.     Qualified Immunity Overview*

Section 1983 civil rights plaintiffs must establish that a person acting under the color of state law deprived them of a guaranteed right under the United States Constitution or federal law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-56 (1978). Government officials typically invoke the defense of qualified immunity to shield themselves from personal liability "for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see*

*also Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006).  Whether an official should be entitled to qualified immunity is a legal question for the courts to decide. *Elder v. Holloway*, 510 U.S. 510, 516 (1994); *see also Tucker v. City of Richmond*, 388 F.3d 216, 219 (6th Cir. 2004).

Federal courts use a two-pronged test to evaluate whether qualified immunity is appropriate.  The relevant inquiry is (1) "whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated," and (2) "whether that right was clearly established." *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) (quotation omitted).  While the plaintiff bears the ultimate burden of showing that the official is not entitled to qualified immunity, *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006), the defendant has the initial burden of showing that his conduct was objectively reasonable under then-existing law. *Tucker*, 388 F.3d at 220.

The burden then shifts to the "plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." *Gardenhire*, 205 F.3d at 311; *see also Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992).  The violated right must have been "clearly established at the time" of the incident. *Vanderhoef v. Dixon*, 938 F.3d 271, 278 (6th Cir. 2019).  That means courts may "consider only the legal rules existing when the

8

challenged conduct occurred, not legal rules adopted by later caselaw." *Lawler v. Hardeman Cnty.*, 93 F.4th 919, 926 (6th Cir. 2024) (quotation omitted); *see also Kenjoh Outdoor, LLC v. Marchbanks*, 23 F.4th 686, 694 (6th Cir. 2022) (requiring courts to "look to the law at the time the official acted" when ascertaining whether a right is clearly established).

Courts may address the qualified immunity prongs in any order but need not reach both elements. *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 496 (6th Cir. 2012). This is because qualified immunity shields government officials from civil damages if *either* prong is not satisfied. *Hall v. Sweet*, 666 F. App'x 469, 474 (6th Cir. 2016). Summary judgment on the ground of qualified immunity is improper when "there is a factual dispute (*i.e.*, a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." *Poe v. Haydon*, 853 F.2d 418, 425-26 (6th Cir. 1988) (citations omitted).

### B. Suggestive Identification – Fourteenth Amendment

#### 1. Constitutional Violation

Suggestive photo identification claims are rooted in the Due Process Clause to the Fourteenth Amendment of the United States Constitution. *See Perry v. New Hampshire*, 565 U.S. 228, 239 (2012); *Haliym v. Mitchell*, 492 F.3d 680, 704 (6th Cir. 2007). The admission of evidence resulting from a suggestive out-of-court

identification violates due process if the procedure leading to the identification is "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967); *see also Neil v. Biggers*, 409 U.S. 188, 197 (1972). Due process is violated when the photo lineup is so suggestive that "it creates a substantial likelihood of misidentification." *Ramsey v. Rivard*, 110 F.4th 860, 869 (6th Cir. 2024) (citation omitted).

The Sixth Circuit evaluates suggestive identifications in two steps. *Salter v. City of Detroit*, 133 F.4th 527, 538 (6th Cir. 2025). At the first step, courts ask whether the identification procedure was "unnecessarily suggestive." *Haliym*, 492 F.3d at 704. This prong is satisfied where "the procedure itself steered the witness to one suspect or another, independent of the witness's honest recollection." *Cornwell v. Bradshaw*, 559 F.3d 398, 413 (6th Cir. 2009); *see also Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001).

Assuming the identification was "unnecessarily suggestive," the next question is whether, "despite the suggestive procedure, the identification was nevertheless reliable." *Salter*, 133 F.4th at 538 (quotation omitted). Five factors determine the identification's reliability: (1) the witness's opportunity to view the suspect, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the suspect, (4) the level of certainty demonstrated by the witness at the time he

10

identified the suspect, and (5) the time between the crime and the identification. *Salter*, 133 F.4th at 538*; see also Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). Courts must consider the totality of the circumstances at both steps. *See Simmons v. United States*, 390 U.S. 377, 383 (1968); *Salter*, 133 F.4th at 538. The inquiry terminates at the first step if the plaintiff fails to show that the photo array was unduly suggestive. *See United States v. Radaker-Carter*, 151 F.4th 840, 848 (6th Cir. 2025).

The photo array in this case was not "unnecessarily suggestive." All the images depicted "African-American males of similar build, color, complexion," age, facial hairstyle, and with the exception of one photo, all with closely-cropped haircuts. The images also appear to be arranged in "random order," with five of the individuals (including Howell) wearing similar white T-shirts. *Id.* at 847-848; *see also Legenzoff v. Steckel*, 564 F. App'x 136, 144 (6th Cir. 2013) ("Many cases . . . indicate that a photo array is not suggestive where only the defendant is dressed in clothing or has a personal attribute that is expressly referenced by a witness."). So there was no material, distinguishing characteristic that drew Gaston's attention to Howell's image or singled him out in a way that confirmed her previous description of the perpetrator.

Now, Howell claims that only his photo and that of another depicted individual "have the clearest brightest eyes in the array." (ECF No. 37, PageID.2664). That description is inaccurate. All the individuals in the array have

their eyes open. (ECF No. 32-19, PageID.1525).  And the white sclerae of four of them (including Howell) are clearly discernible. (*Id.*).  This factor alone could not have "steered" Gaston to identify Howell in the array "independent of [her] honest recollection." *Cornwell*, 559 F.3d at 413; *see also United States v. Sullivan*, 431 F.3d 976, 985 (6th Cir. 2005) (holding that the photo array was not unnecessarily suggestive where the defendant "was the only suspect in lineup with noticeably blue eyes and a majority of the witnesses described the robber as having blue eyes."); *United States v. Burdeau*, 168 F.3d 352, 357 (9th Cir. 1999) (holding that a photo was not suggestive where only the defendant had his eyes closed); *United States v. Sanchez*, 24 F.3d 1259, 1261, 1263 (10th Cir. 1994) (deciding that the photo array was not unconstitutionally suggestive where the defendant was "the only man in the array with his eyes closed – all of the other men had their eyes open and four of the five men were staring directly into the camera.").

Hambright's confirmatory questions to Gaston about her level of certainty during the photo array lineup was not unnecessarily suggestive either.  Hambright opened the identification process with a standard disclaimer that informed Gaston of the following:

> YOU WILL BE ASKED TO LOOK AT A GROUP OF PHOTOGRAPHS.  THE FACT THAT THE PHOTOGRAPHS ARE SHOWN TO YOU SHOULD NOT INFLUENCE YOUR JUDGMENT.  YOU SHOULD NOT CONCLUDE OR GUESS THAT THE PHOTOGRAPHS CONTAIN THE PICTURE OF THE PERSON WHO COMMITTED THE CRIME.  YOU ARE

12

NOT OBLIGED TO IDENTIFY ANYONE.  IT IS JUST AS IMPORTANT TO FREE INNOCENT PERSONS FROM SUSPICION AS TO IDENTIFY GUILTY PARTIES.

PLEASE DO NOT DISCUSS THE CASE WITH OTHER WITNESSES OR INDICATE IN ANY WAY THAT YOU HAVE IDENTIFIED SOMEONE.

(ECF No. 32-19, PageID.1529).

Hambright's conduct during the photo array lineup never departed from these principles.  Although he asked Gaston if she was certain of her selection after she first identified the individual depicted in position 5, he repeated the same question after she retracted her initial choice and instead selected Howell. (ECF No. 32-2, PageID.734; ECF No. 32-6, PageID.1015, Tr. 135:7-9, 16-17).  Gaston testified that she did not feel compelled to select anyone depicted in the photo array; that she was unaware whether the perpetrator appeared in the array; and that Hambright had not suggested to her – either overtly or subtly – which person to select.[1] (ECF No. 32-5, PageID.838-39, Tr. 72:24-73:12).  So Hambright's confirmatory queries to Gaston did not impermissibly suggest that Howell was the perpetrator. *See McGowan v.*

---

[1] Howell claims that Hambright informed Gaston that "the suspect was in the photo array." (ECF No. 37, PageID.2668).  But he does not support this contention with any citation to the record. (*Id.*).  What is more, Howell admits that Hambright provided Gaston with a disclaimer advising her that "[y]ou should not conclude or guess that the photographs contain the picture of the person who committed the crime." (ECF No. 37, PageID.2656, ¶ 40; ECF No. 32-19, PageID.1529).  And Gaston specifically testified at the criminal trial that Hambright did not inform her whether the perpetrator was depicted in the array. (ECF No. 32-5, PageID.838-39, Tr. 72:24-73:12).

*Miller*, 109 F.3d 1168, 1174-75 (7th Cir. 1997) (ruling that detective's question "Are you sure?" after the witness first identified someone in a photo array other than the defendant was not "suggestive and improper."); *see also United States v. Whittle*, 713 F. App'x 457, 464-65 (6th Cir. 2017) (holding that questions confirming the certainty of the witness's choice *after* selecting the defendant from the photo array was not impermissibly suggestive).

Lastly, insofar as Gaston first selected the individual depicted in position 5, her initial misidentification raises a question about her credibility – not the admissibility of her identification. *See United States v. Pickett*, 278 F. App'x 465, 468 (6th Cir. 2008). And that's the exact strategy defense counsel pursued at trial. Counsel not only "vigorously attacked the strength and credibility of Gaston's identification," but he "presented an expert witness to explain how the passage of time and Gaston's brief limited view of the robber while under severe emotional strain reduced the likelihood that Gaston could identify the perpetrator." *People v. Howell*, No. 335449, 2018 Mich. App. LEXIS 320, at *10 (Mich. Ct. App. Feb. 20, 2018). He also stressed these factors when cross-examining Gaston. *Id.* So the jury was well aware of Gaston's initial misidentification when it convicted Howell.

Because Detective Hambright did not conduct the photo array lineup in a manner that fostered "a substantial likelihood" of misidentifying Howell, there is no need to examine the second suggestiveness prong, *i.e.*, whether Gaston's

identification was nevertheless reliable. *Ramsey*, 110 F.4th at 869; *see also Radaker-Carter*, 151 F.4th at 848.  As a result, Hambright did not violate Howell's Fourteenth Amendment "right to be free of unduly suggestive identification procedures." *Gregory v. City of Louisville*, 444 F.3d 725, 745 (6th Cir. 2006).[2]

       2.      Clearly Established Law

Even assuming Hambright's conduct of the photo array lineup was unnecessarily suggestive, Howell's due process claim cannot survive summary judgment because he fails to show that Hambright's actions violated a clearly establish right.

Howell identifies no case clearly establishing that every reasonable officer would understand that Hambright's conduct of the photo array lineup violated the constitution. *See District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018); *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

Nor could the Court independently locate United States Supreme Court or published Sixth Circuit authority deciding that police officers violated a criminal defendant's Fourteenth Amendment "right to be free of unduly suggestive identification procedures" under similar circumstances. *Gregory*, 444 F.3d at 745; *see Bell v. City of Southfield*, 37 F.4th 362, 368 (6th Cir. 2022) (holding that clearly

---

[2] While it's opinion does not carry any preclusive effect, *see Salter*, 133 F.4th at 537, the Michigan Court of Appeals reached the same conclusion on direct review of Howell's criminal proceedings. *See Howell*, 2018 Mich. App. LEXIS 320, at *5-8.

established precedent must be "on-point caselaw that would bind a panel of this court.").

In fact, the most closely analogous Sixth Circuit precedent appears to cut against Howell on both his "open-eyes" theory and his contention that Hambright's confirmatory questions to Gaston were unduly suggestive. *See Sullivan*, 431 F.3d at 985 (holding that the photo array was not unnecessarily suggestive where the defendant "was the only suspect in lineup with noticeably blue eyes and a majority of the witnesses described the robber as having blue eyes."); *see also Whittle*, 713 F. App'x at 464-65 (holding that post-identification confirmatory questions were not impermissibly suggestive).

Since Howell cannot establish the violation of a clearly established right under the Fourteenth Amendment, Detective Hambright is entitled to summary judgment on the basis of qualified immunity.

C. *Brady Violation – Fourteenth Amendment*

1. Constitutional Violation

The Fourteenth Amendment's Due Process Clause mandates that "prosecutors, police officers, and forensic scientists . . . disclose favorable evidence to a criminal defendant that is material to their defense." *Salter*, 133 F.4th at 535. The United States Supreme Court first enunciated this standard in *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

*Brady* violations asserted against police officials under section 1983 require a showing that (1) the officers withheld evidence from the plaintiff "either willfully or inadvertently," (2) the evidence favored the plaintiff "either because it is exculpatory, or because it is impeaching," and (3) the evidence was material enough that its nondisclosure prejudiced the plaintiff's criminal defense. *Salter*, 133 F.4th at 536 (quotation omitted); *see also Jackson v. City of Cleveland*, 925 F.3d 793, 814 (6th Cir. 2019).

*Brady* violations against police officials are viewed differently than those against prosecutors. To hold investigating police officers accountable for a *Brady* violation "the exculpatory value of the evidence must be apparent." *Moldowan v. City of Warren*, 578 F.3d 351, 388 (6th Cir. 2009) (quotation omitted); *see also Salter*, 133 F.4th at 535. "Apparent" means that the investigating officers "have in their possession evidence that they know or should know might be expected to play a significant role in the suspect's defense." *Moldowan*, 578 F.3d at 388-89 (quotation omitted); *see also Lefever v. Ferguson*, 645 F. App'x 438, 449 (6th Cir. 2016). The reason for this "additional burden" is that police officers are not trained to assess whether evidence is material, *i.e.*, the third *Brady* prong. Materiality presents a "legal question" for prosecutors to decide. *Moldowan*, 578 F.3d at 388.

Evidence that another suspect may have committed the charged offense adds another layer to the plaintiff's burden. To satisfy *Brady*'s materiality element, the

17

investigating police officer must have withheld "direct or circumstantial evidence linking the third person to the *actual perpetration* of the crime." *Thorne v. Timmerman-Cooper*, 473 F. App'x 457, 467 (6th Cir. 2012) (quotation omitted) (emphasis added). "Information about other suspects that does not even indirectly link" them to the actual crime is "simply too remote to have been exculpatory or to undermine confidence in the verdict." *Id.* (quotation omitted); *see also Hughbanks v. Hudson*, 2 F.4th 527, 536 (6th Cir. 2021) ("In determining what constitutes a 'legitimate suspect,' we generally look to see what evidence substantiates that the suspects may have been involved in the crime.").

Nothing in this record indicates that Hambright possessed any evidence linking Arthur to the April 3 robbery. No physical or forensic evidence placed Arthur at the crime scene or linked him to the suspect. No eyewitness identified him as the assailant or observed him in the vicinity of crime scene on or immediately before April 3. The sole eyewitness was Gaston, who informed Hambright at the September 19, 2014 photo array, and testified at Howell's criminal trial, that she was 100 percent certain of her identification of Howell. (ECF No. 32-5, PageID.838, 840, Tr. 72:8-17, 74:18-22; ECF No. 32-6, PageID.1015, Tr. 135:16-17).

All that connects Arthur to the April 3 robbery is (1) he admitted to committing a string of 7-Eleven store robberies in southern Macomb County from July through August 2014, (2) he happened to rob the same 7-Eleven store on August

18

20, and (3) his race and build were somewhat similar to the suspect in the April 3 robbery.  But the physical proximity of the two robberies and the general physical similarities between Arthur and the suspect cannot outweigh (1) the length of time that elapsed between the two robberies – over three months between April and July 2014, (2) the certainty of Gaston's identification of Howell, (3) the presence of Howell's DNA at the crime scene, and (4) Arthur's adamant denial that he committed the April 3 robbery, while confessing to multiple other robberies. (ECF No. 32-15, PageID.1460, Tr. 3:15-18; ECF No. 34-16, PageID.2217, Tr. 47:18-19).

Because these two factors – physical proximity and general physical similarity – cannot "even indirectly link" Arthur to the April 3 robbery, such evidence is "simply too remote" to be "exculpatory or to undermine confidence in the verdict." *Thorne*, 473 F. App'x at 467 (quotation omitted); *see also Henness v. Bagley*, 644 F.3d 308, 325 (6th Cir. 2011) (holding that speculation cannot support a *Brady* violation).  And since "the exculpatory value" of Arthur's robberies is not "apparent," no reasonable jury would conclude that Hambright violated *Brady*.[3] *Moldowan*, 578 F.3d at 388 (quotation omitted).

---

[3] Howell appears to suggest that preclusive effect should be accorded to the state circuit court's stipulated finding that the absence of evidence concerning other robberies was a "significant" factor, *i.e.*, material, in deciding to vacate his conviction. (ECF No. 32-31, PageID.1935; *see also* ECF No. 34, PageID.2022). Michigan law forecloses this prospect. *See Salter*, 133 F.4th at 536 ("Federal courts must give a state court judgment the same preclusive effect it would receive in the courts of the rendering state.").

2.      Clearly Established Law

Nonetheless, Howell's *Brady* claim cannot withstand summary judgment because he cannot show that Hambright's actions violated a clearly established right. Howell identifies no case clearly establishing that every reasonable officer would understand (1) that the information concerning Arthur's robberies is *Brady* material, and (2) that Hambright "withheld" this evidence from the prosecutor's office by failing to disclose it to the *specific* attorneys who tried Howell, even though he presented it to the prosecutors who charged Arthur. *See Wesby*, 583 U.S. at 63; *Reichle*, 566 U.S. at 664.

The precedent that most closely addresses the *Brady* "withholding" issue is *Johnson v. Washtenaw Cnty.*, No. 24-12701, 2025 U.S. Dist. LEXIS 190762 (E.D. Mich. Sep. 26, 2025) – a case that Howell references in his supplemental brief. (ECF No. 42, PageID.2968).

---

Collateral estoppel may be invoked in Michigan's courts when the following three elements are met: "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 682-84 (2004) (quotation omitted).  Collateral estoppel is unavailable here because Hambright was not a party – in either his official or individual capacities – to Howell's criminal proceedings.  So he lacked a "full and fair opportunity to litigate" the materiality of the other robberies in the prosecution of that case. *Cf. Reeder v. Williams*, No. 22-4614, 2023 U.S. Dist. LEXIS 216753, at *7-16 (E.D. La. Dec. 6, 2023) (rejecting the contention that a prosecutor's stipulations conceding *Brady* violations, which resulted in the vacatur of the plaintiff's criminal conviction, are entitled to preclusive effect in a subsequent civil rights lawsuit).

In *Johnson*, the plaintiff alleged that two police officers violated *Brady* when they failed to inform the prosecuting attorneys that a cooperating witness at the plaintiff's criminal trial had received a plea deal from the prosecutor's office. *Id.* at *11. The officers moved to dismiss the *Brady* claim, asserting that they could not have withheld information about the plea agreement when the prosecutor's office already knew about it. *Id.* at *13. The district court disagreed.

Denying the portion of officers' motion seeking to dismiss the *Brady* claim, the district court concluded that "the police officers had a duty to disclose exculpatory information that was unknown to the prosecutor involved in the case, even though the evidence was in the possession of the prosecutor's office." *Id.* at *17. The court reasoned that:

> if the evidence might be exculpatory, the officers should not risk failing to disclose it to the prosecuting attorney, even if it may be in the possession of the prosecutor's office, because the prosecuting attorney on the case may not be aware of such information. The default rule should be for the officer to disclose exculpatory evidence to the prosecutor who is handling the case.

*Id.* at *16-17.

The problem for Howell, though, is that *Johnson* is an inadequate source of clearly established law. Two reasons support this conclusion. *First*, as discussed above, clearly established law may only derive from Supreme Court opinions or the Sixth Circuit's published decisions. *See Bell*, 37 F.4th at 368; *see also Bing ex rel. Bing v. City of Whitehall, Ohio*, 456 F.3d 555, 570 (6th Cir. 2006). As an unpublished

21

district court decision, *Johnson* cannot perform this function. *See Hicks v. Crowley*, No. 25-3202, 2025 U.S. App. LEXIS 28004, at *7-8 (6th Cir. Oct. 24, 2025) ("unpublished district-court opinions . . . do not clearly establish anything.") (quotation omitted).

And *second*, the district court expressly held that its ruling – which occurred at the pleading stage – did not constitute clearly established law for qualified immunity purposes. The court observed that:

> Defendants have not yet asserted qualified immunity as a defense. As a result, whether the officers' duty to disclose the information under the facts here was clearly established is not in issue at this stage. Nothing in this opinion is intended to pre-judge the question of qualified immunity should Defendants wish to assert such a defense at a later stage.

*Id.* at *17 n.4. Howell's reliance on *Johnson* as a source of clearly established law is, therefore, unavailing.

Because Howell cannot show the violation of a clearly established right under *Brady*, summary judgment is warranted in Hambright's favor on the ground of qualified immunity.[4]

D.     *Malicious Prosecution – Fourth Amendment*

---

[4] Howell references two cases as clearly established precedent for the asserted *Brady* violation – *D'Ambrosio v. Bagley*, 527 F.3d 489 (6th Cir. 2008) and *Jamison v. Collins*, 291 F.3d 380 (6th Cir. 2002). (ECF No. 34, PageID.2024). Neither case arises from "a fact pattern similar enough to have given fair and clear warning to officers about what the law requires" in this situation. *Hopper v. Plummer*, 887 F.3d 744, 755 (6th Cir. 2018).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures[.]" U.S. Const. amend. IV.  Most recently, in *Thompson v. Clark*, 596 U.S. 36, 42 (2022), the Supreme Court reiterated that section 1983 malicious prosecution claims may be commenced pursuant to the Fourth Amendment.  Malicious prosecution is a theory of liability that stems from the "wrongful institution of legal process." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010).

The cause of action requires proof that (1) the defendant "made, influenced, or participated in the decision to prosecute"; (2) the government lacked probable cause; (3) the proceeding caused the plaintiff to suffer a deprivation of liberty; and (4) the prosecution ended in the plaintiff's favor. *Lester v. Roberts*, 986 F.3d 599, 606 (6th Cir. 2021).  Placing nomenclature aside, "malice" is not an element of a Fourth Amendment malicious prosecution claim. *See Sykes*, 625 F.3d at 309.

Here, Hambright argues that Howell failed to raise any genuine factual questions regarding the first and second elements of the malicious prosecution claim. (ECF No. 32, PageID.712-16).  He is correct on both accounts.

### 1. Participation

As to the first element, "an officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's *truthful* materials." *Sykes*,

625 F.3d at 314 (emphasis in original).   The officer's conduct will qualify as participation "only when his deliberate or reckless falsehoods result in arrest and prosecution without probable cause." *Newman v. Twp. of Hamburg*, 773 F.3d 769, 772 (6th Cir. 2014).   "[P]articipation must be marked by some kind of blameworthiness, something beyond mere negligence or innocent mistake." *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015); *see also Novak v. City of Parma*, 33 F.4th 296, 307 (6th Cir. 2022).   When the officer's malfeasance is based upon the deliberate or reckless omission of evidence, that evidence must also be "material" to the prosecution of the charged offense. *See Dipasquale v. Hawkins*, 748 F. App'x 688, 693 (6th Cir. 2018).   Hambright's purported omissions do not meet this threshold.

*Location of Physical Evidence.* Howell cannot point to any evidence that Hambright deliberately or recklessly misidentified where police officers initially recovered the paper bag with the beer can containing Howell's DNA.  In any event, the disparity between where Hambright reported the can's location at the crime scene (the eastside of the store) and where officers actually recovered the can (outside the front door on the store's northside) was immaterial to the prosecution.  What matters is that officers observed the beer can and straw at the crime scene and that the Michigan State Police recovered Howell's DNA from those items. (ECF No. 32-2, PageID.732-33; ECF No. 32-11, PageID.1295).

24

*Gaston's Initial Misidentification.* Howell also fails to show that Hambright deliberately or recklessly misrepresented the circumstances surrounding Gaston's identification of Howell during the photo array lineup. Hambright acknowledged in his report that Gaston initially identified the person in position 5. (ECF No. 34-2, PageID.2038). And the Court already determined that Hambright's confirmatory question about the certainty of that selection was not unduly suggestive. *See supra* Section IV.B.1.

*The Store Owner's Statements.* Nor is there any indication that Hambright was aware when he drafted his report that the 7-Eleven store's owner later watched surveillance video of the perpetrator holding only the cardboard container and not a paper bag with a beer can. But that omission (if it even is one) is not material because the owner's observations do not preclude the possibilities that (1) the perpetrator was holding the paper bag with the beer can at some point off-screen, or that (2) the video surveillance footage was unclear.[5]

Viewing all this evidence in Howell's favor, he fails to raise a genuine factual question as to whether Hambright "participated in the decision to prosecute" him. *Lester*, 986 F.3d at 606.

---

[5] The store's owner testified that the surveillance video system is old and that the outdoor footage taken on April 3 was unclear. (ECF No. 32-6, PageID.893, 897-98, Tr. 13:20-21, 17:13-20, 18:4-11; ECF No. 34-20, PageID.2262, 2269, Tr. 12:5-9, 19:10-14).

2.      Probable Cause

The second element – lack of probable cause – does not favor Howell's position either.   "Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a prudent [person] in believing that the arrestee had committed or was committing an offense." *Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001) (citation and internal quotation marks omitted).   "Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999).   A state court's probable cause assessment is preclusive unless it resulted from an investigating officer's submission of false evidence. *See Peet v. City of Detroit*, 502 F.3d 557, 566 (6th Cir. 2007).

Hambright proffered sufficient evidence to the prosecutor's office to establish probable cause for charging Howell with armed robbery.   He possessed DNA evidence linking Howell directly to the crime scene.   Gaston identified Howell as the perpetrator from a non-suggestive photo array with 100 percent certainty. (ECF No. 32-5, PageID.838, 840, Tr. 72:8-17, 74:18-22; ECF No. 32-6, PageID.1015, Tr. 135:16-17; *see also* ECF No. 32-2, PageID.734).   She testified with the same level of certainty during Howell's preliminary examination. (ECF No. 34-18, PageID.2241, Tr. 20:1-5).   And the state district court relied upon her positive

26

identification to find adequate probable cause to bind the matter over for trial. (*Id.*, PageID.2247, Tr. 43:14-17). *See Lester*, 986 F.3d at 603, 610 (holding that witness identification and DNA evidence recovered at the crime scene were sufficient to establish probable cause and defeat a section 1983 malicious prosecution claim).

Since no reasonable jury could decide that (1) Hambright participated in the decision to prosecute Howell, or (2) insufficient probable cause existed to arrest Howell and charge him with armed robbery, Hambright did not violate the Fourth Amendment.  He is, therefore, entitled to summary judgment on the section 1983 malicious prosecution claim.[6]

### E.      Malicious Prosecution – State Law

A Michigan malicious prosecution claim requires proof that (1) the defendant "initiated a criminal prosecution against" the plaintiff, (2) "the criminal proceedings terminated in [the plaintiff's] favor," (3) the defendant "lacked probable cause for

---

[6] Since Hambright did not maliciously prosecute Howell in violation of the Fourth Amendment there is no need to determine whether he violated a clearly established right, *i.e.*, the second qualified immunity prong. *See Hoover v. Walsh*, 682 F.3d 481, 501, n.57 (6th Cir. 2012).  It is worth observing, however, that "[a] police officer violates a suspect's clearly established right to freedom from malicious prosecution under the Fourth Amendment only when his deliberate or reckless falsehoods result in arrest and prosecution without probable cause." *Johnson*, 790 F.3d at 655 (citation and quotation marks omitted).  The Sixth Circuit clearly established this right since "at least 1999." *Jones v. Clark Cnty.*, 959 F.3d 748, 767 (6th Cir. 2020).  And as to the level of factual particularity required to clearly establish this right, the Sixth Circuit has opined that "[t]he specifics of the case only matter[ ] with respect to assessing the viability of the malicious prosecution claim under the standard for summary judgment, not as a means of narrowly defining the right at issue." *Id.*

his actions," and (4) "the action was undertaken with malice or a purpose . . . other than bringing the offender to justice." *Susselman v. Washtenaw Cnty. Sheriff's Office*, 109 F.4th 864, 872 (6th Cir. 2024) (quotation omitted). To satisfy the fourth prong, the defendant's conduct must be "willful, wanton, or reckless, or against the accuser's sense of duty." *Id.* (quotation omitted). This usually requires proof of "bad blood, ill will or retribution." *Id.* (quotation omitted)

Howell falls short of raising a genuine factual question regarding the fourth prong. No reasonable jury could infer from the record that Hambright failed to disclose evidence to prosecutors out of malice towards Howell or for "a purpose . . . other than bringing the offender to justice." *Susselman*, 109 F.4th at 872.

Howell is correct in that malice may be inferred from a lack of probable cause. *See Matthews v. Blue Cross & Blue Shield*, 456 Mich. 365, 378 n.14 (1998); *see also Mann v. Walmart Stores East LP*, No. 357123, 2022 Mich. App. LEXIS 6156, at *5 (Mich. Ct. App. Oct. 13, 2022). But the Court already concluded that sufficient probable cause existed to charge Howell with armed robbery. *See supra* Section IV.D.2. And although Howell contends that Hambright inaccurately reported where police officers located certain physical evidence at the crime scene, those disparities are not material. (ECF No. 37, PageID.2670, 2673). *See supra* Section IV.D.1. Even if they were, "[f]ailure to include all exculpatory facts is not adequate to sustain a

28

suit for malicious prosecution." *Payton v. City of Detroit*, 211 Mich. App. 375, 395 (1995).

Because Howell cannot show that Hambright acted with malice or an improper motive, summary judgment dismissing the state law malicious prosecution claim is appropriate. Accordingly,

IT IS ORDERED that Hambright's motion for summary judgment (ECF No. 32) is granted.

IT IS FURTHER ORDERED that Howell's cross-motion for partial summary judgment (ECF No. 34) is denied.

Dated: June 10, 2026                            s/ Robert J. White
                                                Robert J. White
                                                United States District Judge

29